**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

| | |
|---|---|
| MICHAEL A. WINTERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 1:21-cv-00116-HEA |
| | ) |
| TOMMY GREENWELL, et al., | ) |
| | ) |
| Defendants. | ) |

### OPINION, MEMORANDUM AND ORDER

This matter comes before the Court on the motion of plaintiff Michael A. Winters for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 2). Having reviewed the motion and the financial information submitted in support, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee, and will assess an initial partial filing fee of $1.32. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will order plaintiff to file an amended complaint.

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id*.

In support of his motion for leave to proceed in forma pauperis, plaintiff has submitted a copy of his certified inmate account statement. (Docket No. 3). The account statement shows an average monthly deposit of $6.60. The Court will therefore assess an initial partial filing fee of $1.32, which is 20 percent of plaintiff's average monthly deposit.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should

2

construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

### The Complaint

Plaintiff is a self-represented litigant who is currently incarcerated at the Farmington Correctional Center in Farmington, Missouri. At the times relevant to this complaint, however, he was an inmate at the Pemiscot County Jail in Caruthersville. Plaintiff brings this action pursuant to 42 U.S.C. § 1983, naming Sheriff Tommy Greenwell, Assistant Jail Administrator Torrence Akins, Nurse Kristy Tate, Prosecutor Jeremy Lytle, Public Defender Edwin Ketcham, and Prosecutor Josh Tomlin as defendants. (Docket No. 1 at 2-4). He does not indicate the capacity in which Prosecutor Tomlin is sued. All other defendants are sued in their official capacities only. The complaint contains a number of different allegations regarding incidents that occurred between 2016 and 2021.

Plaintiff begins his "Statement of Claim" by asserting that since 2016, Jail Administrator Akins always stopped by his cell to harass him, threatening to have other inmates harm him if he did not stop "talking and [writing] grievances and complaints." (Docket No. 1 at 5). This occurred while plaintiff was in the Pemiscot County Jail. After being released from jail in "late 2016 or

early 2017," Jail Administrator Akins – who had become a sheriff's deputy – came to his residence on an almost "daily basis" in order to search for stolen items in his "private living area." Plaintiff states that these searches were unannounced and warrantless.

In 2017, plaintiff was arrested and had his probation revoked. In either late 2017 or early 2018, he was released from prison and transported to Sikeston, Missouri, after which he made his way to the Pilot Travel Center in Hayti. When plaintiff "stepped onto the parking [lot]," Deputy Akins saw plaintiff from Akins's parked patrol vehicle. According to plaintiff, Deputy Akins began questioning him about what he was doing at the Pilot Travel Center. Eventually, Deputy Akins "ran a 29 on [him]," checking for warrants. Plaintiff was then arrested and taken to the Pemiscot County Jail, even though he claims that Deputy Akins had no right to run a warrant check on him.

Plaintiff states that he stayed at the Pemiscot Jail for three weeks for a traffic citation for a warrant he claims he did not have when he left prison. (Docket No. 1 at 6). After he was released, Deputy Akins continued to "harass" him. Plaintiff complained to his parole officer and to the Caruthersville Chief of Police. The Chief of Police "finally told them to stop harassing" plaintiff and to stop running warrant checks unless he "was a suspect in a crime."

In October of 2019, plaintiff "was arrested for trumped up false charges" and taken to the Pemiscot County Jail. He alleges that Jail Administrator Akins came to his cell, threatened him with mace and a taser, and informed plaintiff that Akins was going to have him "transferred straight to prison." Within a few days, plaintiff was indeed sent to prison.

In April of 2020, plaintiff was transported from prison back to the Pemiscot County Jail "to face a number of bogus charges that Prosecutor Jeremy Lytle failed to prosecute or bring before open court." From April 2020 until May 2021, plaintiff asserts that Sheriff Greenwell, Jail

Administrator Akins, Prosecutor Lytle, Nurse Tate, and Public Defender Ketcham "denied, violated, and refused to render due diligence."

In May of 2020, plaintiff alleges that Jail Administrator Akins came to his cell and deployed mace against him through the tray hole. (Docket No. 1 at 7). Plaintiff also claims that Jail Administrator Akins used a taser on him.

Plaintiff states that he wrote to Sheriff Greenwell, asking "him to put a stop to" Jail Administrator Akins's behavior. Instead, he was placed "in a suicide cell with 4 other inmates." The suicide cell had one bed, one toilet, and no space in which to walk or move around. Plaintiff had to stay in the cell for three months, even though Nurse Tate noted that he was not suicidal.

During plaintiff's fourteen-month stay at the Pemiscot County Jail, plaintiff asserts that Nurse Tate "did not provide adequate medical attention for" his mental health issues, diabetes, or injuries. He further states that Nurse Tate did not follow COVID-19 protocols.

After plaintiff's father, sister, and former boss called the Pemiscot County Jail, plaintiff was "finally taken out of [the] suicide cell" and "placed back in D Pod." Once he was out, Jail Administrator Akins told trustees that plaintiff had "snitched on them." Plaintiff requested protective custody, but was ignored. However, a night shift jailer moved him into the federal pod with federal inmates. Plaintiff was in the federal pod for "[a] few weeks" before being moved back to D Pod, where he was "attacked with a tray and [received] a black eye." He states that he wrote to Sheriff Greenwell asking to be moved to protective custody, and to Nurse Tate seeking medical attention, but received no reply from either person.

Between June and November of 2020, plaintiff "begged" Prosecutor Lytle "to grant [him] bail," or to either "prosecute the case or dismiss it for violating [his] constitutional right to a speedy trial." (Docket No. 1 at 8). He "constantly and [persistently] called and wrote letters to" Public

5

Defender Ketcham, Prosecutor Lytle, the judge, and the sheriff, seeking bail or a court date, since he had been in the Pemiscot County Jail over a year. In November, Prosecutor Lytle "traded professions with Josh Tomlin[,] who was a private attorney." Thereafter, Tomlin took over as prosecuting attorney.

Plaintiff contends that Jail Administrator Akins has continued to encourage violent inmates to harm him. On April 26, 2021, Jail Administrator Akins moved plaintiff to C Pod, along with other "violent inmates." These "violent inmates" included murderers and gang members. While in C Pod, plaintiff "was assaulted, beaten, bruised, [and had his] front teeth knocked out."

In summation, plaintiff states that since he was incarcerated at the Pemiscot County Jail he has been "consistently denied medical treatment," he has been "harassed, beaten, and [tasered] by jail staff," he has been denied bail, and he has been denied proper court proceedings. (Docket No. 1 at 9). He alleges that Prosecutor Lytle, Judge Copeland, and Sheriff Greenwell "conspired to shut [his] mouth by police harassment, false arrest, and racial injustice and discrimination."

Plaintiff states that Nurse Tate has denied his mental health and diabetic medications since 2016. (Docket No. 1 at 10). He further alleges that Jail Administrator Akins has harassed him, intimidated him, abused him, and violated his rights since 2016. Finally, he accuses Prosecutors Lytle and Tomlin of conspiring to deny, delay, and refuse him due process.

As a result of these incidents, plaintiff wants the Court to gather all his grievances and incident reports, and to contact witnesses and staff on his behalf. (Docket No. 1 at 12). He also seeks $2 million in compensation.

## Discussion

Plaintiff is a self-represented litigant who brings this civil action pursuant to 42 U.S.C. § 1983, alleging numerous constitutional violations while incarcerated at the Pemiscot County Jail

6

at different times since 2016. Because plaintiff is proceeding in forma pauperis, the Court has reviewed his complaint under 28 U.S.C. § 1915. Based on that review, plaintiff's complaint is subject to dismissal. However, he will be given the opportunity to file an amended complaint.

### A. Deficiencies in Complaint

Plaintiff's complaint is deficient and subject to dismissal for two reasons. First, plaintiff has sued defendants Greenwell, Akins, Tate, Lytle, and Ketcham in their official capacities only. As to Prosecutor Tomlin, plaintiff is silent as to capacity, meaning that Tomlin is assumed to be sued in his official capacity only as well. *See Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007) (explaining that if a plaintiff's complaint is silent about the capacity in which the defendant is being sued, the complaint is interpreted as including only official capacity claims). In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999).

In this case, Sheriff Greenwell, Jail Administrator Akins, Prosecutor Lytle, and Prosecutor Tomlin are alleged to be employed by Pemiscot County. Thus, the official capacity claims against them are claims against the county itself, their employer. However, plaintiff has not demonstrated the liability of Pemiscot County by demonstrating that he was harmed due to an unconstitutional policy, custom, or failure to train. *See Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018) (explaining that municipal liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise").

7

With regard to Nurse Tate, she is alleged to be employed by Corizon. To state an official capacity claim against Corizon, plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury." *See Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006). He has not done this.

Finally, as to Public Defender Ketcham, he is alleged to be employed by the State of Missouri. However, an official capacity claim against a state employee for money damages is barred by the Eleventh Amendment. *See Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999) ("A claim for damages against a state employee in his official capacity is barred under the Eleventh Amendment").

The second reason the complaint is deficient is because plaintiff has improperly joined numerous different claims into a single lawsuit. Rule 20 of the Federal Rules of Civil Procedure governs joinder of defendants, and provides:

> Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). Under this rule, a plaintiff cannot join, in a single lawsuit, a multitude of claims against different defendants that are related to events arising out of different occurrences or transactions. In other words, "Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). "Unrelated claims against different defendants belong in different suits . . . [in part] to ensure that prisoners pay the required filing fees – for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees." *Id.*

8

In this case, plaintiff's complaint encompasses incidents spread over five different years, with very different sets of operative facts. For instance, he has accused Jail Administrator Akins of retaliation, unreasonable searches, harassment, and excessive force, occurring between 2016 and 2021, and occurring both within and without the Pemiscot Jail. As to Nurse Tate, on the other hand, plaintiff has alleged that Tate denied him mental health and diabetic medications, claims that are not related to those against Jail Administrator Akins or any other defendant. He also alleges a conspiracy among various defendants to deny him his due process rights in his criminal case, a claim that has nothing to do with the conditions of confinement at the Pemiscot County Jail, or the purported lack of medical care. Despite his status as a self-represented litigant, plaintiff must still comply with the Federal Rules of Civil Procedure. *See Ackra Direct Marketing Corp. v. Fingerhut Corp.*, 86 F.3d 852, 856 (8th Cir. 1996) ("In general, pro se representation does not excuse a party from complying with a court's orders and with the Federal Rules of Civil Procedure").

Rather than dismissing this case, the Court will give plaintiff the opportunity to cure these deficiencies by filing an amended complaint according to the instructions set forth below. Plaintiff **must** follow these instructions in preparing his amended complaint.

### B. Amendment Instructions

Plaintiff should type or neatly print his amended complaint on the Court's civil rights form, which will be provided to him. *See* E.D. Mo. L.R. 2.06(A) ("All actions brought by self-represented plaintiffs or petitioners should be filed on Court-provided forms"). If the amended complaint is handwritten, the writing must be legible.

In the "Caption" section of the Court-provided form, plaintiff should clearly name each and every party he is intending to sue. *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must

9

name all the parties"). If there is not enough room in the caption, plaintiff may add additional sheets of paper. However, all the defendants must be clearly listed.

Plaintiff should fill out the complaint form in its entirety, and ensure that it is signed.

In the "Statement of Claim" section, plaintiff should provide a short and plain statement of the factual allegations supporting his claim. *See* Fed. R. Civ. P. 8(a). Plaintiff should put each claim into a numbered paragraph, and each paragraph should be "limited as far as practicable to a single set of circumstances." *See* Fed. R. Civ. P. 10(b).

As noted above, plaintiff's complaint contains numerous unrelated claims. By way of example, he has accused one defendant of excessive force, another defendant of failing to give him mental health medications, and other defendants of conspiring to deny him his due process rights. All these incidents occurred at different times, and involved different people. **The amended complaint should only include claims that arise out of the same transaction or occurrence.** In other words, plaintiff should only include claims that are related to each other. *See* Fed. R. Civ. P. 20(a)(2). If plaintiff has unrelated claims, he must file them in a separate lawsuit.

Alternatively, plaintiff may choose a single defendant and set forth as many claims as he has against that defendant. *See* Fed. R. Civ. P. 18(a). For example, if plaintiff wishes to sue Jail Administrator Akins alone, he may set forth as many claims as he has against him.

In structuring his amended complaint, plaintiff should begin by writing the defendant's name. In separate, numbered paragraphs under that name, plaintiff should write a short and plain statement of the factual allegations supporting his claim against that specific defendant. If plaintiff is suing more than one defendant, he should follow the same procedure for each defendant.

Plaintiff must specify whether he intends to sue each defendant in an official capacity, an individual capacity, or both. The failure to sue a defendant in his or her individual capacity may result in the dismissal of that defendant.

If plaintiff is suing a defendant in an individual capacity, he is required to allege facts demonstrating the personal responsibility of the defendant for harming him. *See Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (stating that § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights"). Furthermore, the Court emphasizes that the "Statement of Claim" requires more than "labels and conclusions or a formulaic recitation of the elements of a cause of action." *See Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017).

If plaintiff is suing multiple defendants, it is important that he establish the responsibility of each separate defendant for harming him. That is, for each defendant, plaintiff must allege facts showing how that particular defendant's acts or omissions violated his constitutional rights. It is not enough for plaintiff to make general allegations against all the defendants as a group. Rather, plaintiff needs to provide the role of each named defendant in this case, in order that each specific defendant can receive notice of what he or she is accused of doing. *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (stating that the essential function of a complaint "is to give the opposing party fair notice of the nature and basis or grounds for a claim").

Plaintiff is warned that the filing of an amended complaint **completely replaces** the original complaint. This means that claims that are not re-alleged in the amended complaint will be deemed abandoned. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect").

After receiving the amended complaint, the Court will review it pursuant to 28 U.S.C. § 1915. Plaintiff's failure to make specific factual allegations against a defendant will result in the dismissal of that defendant. **If plaintiff fails to file an amended complaint on a Court-provided form within thirty days in accordance with the instructions set forth herein, the Court will dismiss this action without prejudice and without further notice to plaintiff.**

### C. Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel. (Docket No. 4). In civil cases, a pro se litigant does not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim…and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

After reviewing these factors, the Court finds that the appointment of counsel is not warranted at this time. As discussed above, the Court has determined that plaintiff's complaint is deficient, and has ordered him to file an amended complaint. The Court will entertain future motions for appointment of counsel as the case progresses, if appropriate.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $1.32 within thirty (30) days of the date of this order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel (Docket No. 4) is **DENIED** at this time.

**IT IS FURTHER ORDERED** that the Clerk of Court shall send to plaintiff a copy of the Court's prisoner civil rights complaint form.

**IT IS FURTHER ORDERED** that plaintiff shall file an amended complaint on the Court-provided form within **thirty (30) days** of the date of this order, in accordance with the instructions set forth above.

**IT IS FURTHER ORDERED** that if plaintiff fails to file an amended complaint on the Court-provided form in accordance with the instructions set forth above within **thirty (30) days** of the date of this order, this action will be dismissed without prejudice and without further notice.

**IT IS FURTHER ORDERED** that upon receipt of plaintiff's amended complaint, the Court will review it pursuant to 28 U.S.C. § 1915.

Dated this 12th day of January, 2022.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE