**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

| | |
|---|---|
| MICHAEL A. WINTERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:21-cv-00116-HEA |
| ) | |
| TOMMY GREENWELL, et al., ) | |
| ) | |
| Defendants. ) | |

**OPINION, MEMORANDUM AND ORDER**

This matter comes before the Court on review of plaintiff Michael A. Winters's second amended complaint pursuant to 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court will dismiss plaintiff's official capacity claims, as well as the claim against defendant Tommy Greenwell. However, the Court will direct the Clerk of Court to issue process on defendant Torrence Akins in his individual capacity.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

**Background**

Plaintiff is a self-represented litigant who is currently incarcerated at the Farmington Correctional Center in Farmington, Missouri. On August 16, 2021, he filed a civil action pursuant to 42 U.S.C. § 1983, alleging various constitutional violations while he was an inmate at the Pemiscot County Jail in Caruthersville. (Docket No. 1). In the complaint, plaintiff named Sheriff Tommy Greenwell, Assistant Jail Administrator Torrence Akins, Nurse Kristy Tate, Prosecutor Jeremy Lytle, Public Defender Edwin Ketcham, and Prosecutor Josh Tomlin as defendants. He

2

did not indicate the capacity in which Prosecutor Tomlin was sued. All other defendants were sued in their official capacities only. The complaint contained a number of different allegations regarding incidents that occurred between 2016 and 2021.

Along with the complaint, plaintiff filed a motion for leave to proceed in forma pauperis. (Docket No. 2). On January 12, 2022, the Court granted the motion and assessed an initial partial filing fee. (Docket No. 6). Because plaintiff was proceeding in forma pauperis, the Court reviewed his complaint under 28 U.S.C. § 1915. Based on that review, the Court determined that plaintiff's complaint was subject to dismissal. First, defendants were sued in their official capacities only, but plaintiff had failed to state an official capacity claim. Second, the Court noted that plaintiff had improperly joined numerous claims into a single lawsuit, asserting allegations over the course of five different years, with different operative facts.

Instead of dismissing the complaint, the Court gave plaintiff the opportunity to file an amended complaint, and included instructions on how to do so. On January 31, 2022, the Court received plaintiff's amended complaint. (Docket No. 7).

The amended complaint was brought pursuant to 42 U.S.C. § 1983 and named Sheriff Tommy Greenwell, Jail Administrator Torrence Akins, Nurse Kristy Tate, and Prosecutor Jeremy Lytle as defendants. All defendants were sued in both their official and individual capacities. Plaintiff's allegations encompassed various conditions of confinement at the Pemiscot County Jail from May 2020 to May 2021, including excessive force, failure to protect, and deliberate indifference to his medical needs.

As plaintiff was proceeding in forma pauperis, the Court reviewed his amended complaint under 28 U.S.C. § 1915. As before, the Court determined that his allegations were not sufficient for purposes of initial review. In particular, plaintiff had not stated an official capacity claim

3

against any of the defendants, as he had not demonstrated the liability of either Pemiscot County or Corizon, their employers. Furthermore, the Court noted that plaintiff's individual capacity claims were deficient, as he had not established that each defendant was personally responsible for violating his constitutional rights. Finally, as in his original complaint, plaintiff improperly joined unrelated claims.

Rather than dismissing the amended complaint, the Court gave him another opportunity to amend. On March 4, 2022, the Court received plaintiff's second amended complaint. (Docket No. 11).

**The Second Amended Complaint**

Plaintiff brings his second amended complaint pursuant to 42 U.S.C. § 1983, naming Sheriff Tommy Greenwell and Jail Administrator Torrence Akins as defendants. (Docket No. 11 at 2-3). Both are sued in their official and individual capacities. With regard to Akins, plaintiff asserts claims of excessive force and failure to protect, while he accuses Greenwell of a failure to train.

In the "Statement of Claim," plaintiff alleges that on July 15, 2020, Jail Administrator Akins deployed mace and a taser against him, through the tray hole of his cell. (Docket No. 11 at 3). He asserts that the mace got in his mouth, so that he could not breathe. Immediately afterward, Akins tased him, which caused plaintiff to fall and "hit [his] head on the rail." Plaintiff explains that earlier that day, Akins had cursed at him and threatened him, and that Akins was upset with him because of his grievances. He states that Akins targeted him because he "demanded [his] rights and due process." (Docket No. 11 at 4).

Plaintiff further states that around April 2021, Jail Administrator Akins moved him out of the "Federal Pod" at the Pemiscot County Jail and sent him to the D-Pod, which plaintiff refers to

4

as the "Murder Pod," because it housed violent offenders. (Docket No. 11 at 4-5). He asserts that in D-Pod he was on lockdown status, meaning his cell door would only be opened for an hour a day, at midnight. (Docket No. 11 at 4). Because he had been labeled a snitch, plaintiff states that the other inmates in the pod "hated" him and would throw "water, excrement, urine, and other things through [his] tray hole." He asserts that he would "bang on [the] door or flood [his] cell to get a jailer," though no one would come. Plaintiff claims he "repeatedly" asked for protective custody. Instead, Akins "moved [him] and all the other inmates to C-Pod," where he "was attacked" and had his "front teeth, and a few other[s]…knocked out." Eventually, after complaining to the night shift supervisor, he was "moved back to the federal holding pod." (Docket No. 11 at 5). However, plaintiff states that when Akins found out, he had plaintiff moved back to D-Pod, where he was assaulted and harassed. In December 2020, he claims that an assault resulted in bruises and a black eye.

With regard to Sheriff Greenwell, plaintiff states that Greenwell "failed to train [the] jailers," and that the jailers did not comply with their own standard operating procedures. (Docket No. 11 at 4). In particular, he contends that Greenwell "elevated" Akins "from a deputy to jail administrator," even though he was not "properly train[ed] to be one." (Docket No. 11 at 5). Plaintiff further states that he began writing the judge in his case requesting a hearing, and also started a "letter writing campaign," which he believes "infuriated" Greenwell. At some point, plaintiff states that he wrote a grievance to Greenwell about not being placed in protective custody. He does not describe the outcome of that grievance, what it contained, when it was sent, or whether it was received.

As a result of these incidents, plaintiff states that he suffered "mental and emotional anguish, head trauma, [and had his] front teeth knocked out." He seeks $2 million in actual damages and $2 million in punitive damages. (Docket No. 11 at 6).

### Discussion

Plaintiff is a self-represented litigant who brings this civil action pursuant to 42 U.S.C. § 1983, alleging that Jail Administrator Akins used excessive force against him and failed to protect him, and that Sheriff Greenwell failed to train Akins. Because he is proceeding in forma pauperis, the Court reviewed his second amended complaint under 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court will dismiss plaintiff's official capacity claims, as well as the claim against defendant Tommy Greenwell. However, the Court will direct the Clerk of Court to issue process on defendant Torrence Akins in his individual capacity.

### A. Official Capacity Claims

Plaintiff has sued both Sheriff Greenwell and Jail Administrator Akins in their official capacities. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

In this case, both Sheriff Greenwell and Jail Administrator Akins are alleged to be employed by Pemiscot County. As such, the official capacity claims against them are actually claims against the county itself, their employer.

A local governing body such as Pemiscot County can be sued directly under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). To prevail on this type of claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075. Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can prove the liability of Pemiscot County.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id*. at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted

7

and promulgated by the municipality's governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (explaining that inadequate training may serve as the basis for 42 U.S.C. § 1983 liability only when "the failure to train amounts to deliberate indifference"). To show deliberate indifference, a plaintiff must prove that the municipality "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005). Ordinarily, this is done by a plaintiff alleging a "pattern of similar constitutional violations by untrained employees." *See S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *See Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an

unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003). In this case, plaintiff has not presented sufficient facts to support the inference that he was harmed by a Pemiscot County policy, custom, or failure to train.

First, with regard to policy, plaintiff has not pointed to any "policy statement, ordinance, regulation, or decision officially adopted and promulgated by [Pemiscot County's] governing body" as being at issue in this case, let alone causing a violation of his constitutional rights. Certainly, he has not demonstrated that he was harmed due to a "deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." That is, he has not directly alleged that it was Pemiscot County policy to treat him as he describes, and he has not presented sufficient facts from which the existence of such a policy can be inferred.

Second, as to custom, plaintiff has not shown the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by" Pemiscot County employees, much less that county policymaking officials were deliberately indifferent to or tacitly authorized such misconduct. The focus of plaintiff's facts is on Jail Administrator Akins's actions towards him. While he vaguely alludes to Akins's behavior towards other inmates, he does not present enough allegations to show a "persistent pattern of unconstitutional misconduct," or that such misconduct was "widespread" to the degree that it became an unofficial custom.

Third, and similarly, plaintiff has not established a deliberately indifferent failure to train or supervise on the part of Pemiscot County. To show deliberate indifference, plaintiff must demonstrate that Pemiscot County "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." Generally, such notice is provided by a plaintiff

9

alleging a "pattern of similar constitutional violations by untrained employees." As noted above, plaintiff's allegations do not describe such a pattern.

Finally, to the extent that plaintiff seeks to hold Pemiscot County liable for the actions of its employees, the Court notes that a municipality cannot be held liable merely because it employs a tortfeasor. *See A.H. v. City of St. Louis, Mo.*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under § 1983, a municipality…cannot be liable on a respondeat superior theory").

For all these reasons, plaintiff has failed to state a claim against Pemiscot County. Therefore, the official capacity claims against defendants Greenwell and Akins must be dismissed.

### B. Individual Capacity Claim Against Sheriff Greenwell

Plaintiff has sued Sheriff Greenwell in his individual capacity, accusing him of a failure to train his employees. Vicarious liability is inapplicable in 42 U.S.C. § 1983 suits. *Marsh*, 902 F.3d at 754. Rather, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, "a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). *See also Morris v. Cradduck*, 954 F.3d 1055, 1060 (8th Cir. 2020) ("To state a claim against a supervisor, a plaintiff must show that the supervising official, through his own individual actions, violated the Constitution").

In this case, plaintiff has not alleged that Sheriff Greenwell directly participated in any constitutional violation. That is, he does not assert that Greenwell personally used excessive force against him or directed his housing assignments in the jail. Instead, plaintiff accuses Greenwell of failing to train Jail Administrator Akins.

10

To succeed on a failure to train claim, "[t]he plaintiff must demonstrate that the supervisor was deliberately indifferent to or tacitly authorized the offending acts," which "requires a showing that the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996). Furthermore, the plaintiff must show that the failure to train or supervise caused the injury. *Moore v. City of Desloge, Mo.*, 647 F.3d 841, 849 (8th Cir. 2011).

Here, plaintiff asserts that he sent a grievance to Sheriff Greenwell, but does not present facts showing what it contained, when it was sent, or whether it was received. In other words, plaintiff has not – without more – established that Greenwell had notice of Jail Administrator Akins's actions or that Greenwell's training procedures were inadequate. In addition, plaintiff's facts do not show that Greenwell's failure to train or supervise Akins was the cause of his injuries. Rather than presenting facts to support his assertion, plaintiff has simply presented a cause of action. This is not sufficient to state a claim. *See Hamilton v. Palm*, 621 F.3d 816, 817-18 (8th Cir. 2010) (explaining that "[a] pleading that merely pleads labels and conclusions, or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of factual enhancement will not suffice").

To the extent that plaintiff is attempting to assert liability against Sheriff Greenwell for failing to respond to his grievances, such a claim must fail. That is because a jail's grievance process is a procedural right only, and does not confer a substantive right. *See Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). *See also Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (agreeing with district court that "defendants' denial of [plaintiff's] grievances did not state a substantive constitutional claim"); and *Fallon v. Coulson*, 5 F.3d 531, 1993 WL 349355, at *1 (8th Cir. 1993) (unpublished opinion) (stating that the failure of defendants "to acknowledge receipt of

11

and respond to plaintiffs' grievances pursuant to prison procedure did not violate any of plaintiffs' constitutional rights").

For these reasons, plaintiff has failed to state a claim against Sheriff Greenwell in his individual capacity. Therefore, this claim must be dismissed.

### C. Individual Capacity Claim Against Jail Administrator Akins

Plaintiff has sued Jail Administrator Akins in his individual capacity, accusing him of using excessive force and of failing to protect him from other inmates. As a preliminary matter, the Court notes that plaintiff's prisoner status at the time of this incident is not entirely clear. Plaintiff has checked the box in the form complaint indicating that he is a convicted and sentenced state prisoner. (Docket No. 11 at 2). However, at the time these events occurred, he was being held in a county jail, and asserts that he was waiting for a hearing to take place, implying that he might have been a pretrial detainee. As discussed below, the Court has determined that plaintiff's allegations are sufficient for purposes of initial review under either the Eighth or Fourteenth Amendments.

#### i. Excessive Force

"The Eighth Amendment does not apply to pretrial detainees, but the Due Process Clause of the Fourteenth Amendment imposes analogous duties on jailers to care for detainees." *Christian v. Wagner*, 623 F.3d 608, 613 (8th Cir. 2010). To that end, the Due Process Clause protects pretrial detainees from the use of excessive force amounting to punishment. *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473 (2015). *See also Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (stating that "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law"); and *Smith v. Conway Cty., Ark.*, 759 F.3d 853, 858 (8th Cir. 2014) (stating that "the Due Process Clause prohibits any punishment of a pretrial detainee, be that punishment cruel-and-unusual or not"). Analysis of excessive force claims under the Due Process

12

Clause focuses on whether the defendant's purpose in using force was "to injure, punish, or discipline the detainee." *Edwards v. Byrd*, 750 F.3d 728, 732 (8th Cir. 2014). The Fourteenth Amendment gives state pretrial detainees "rights which are at least as great as the Eighth Amendment protections available to a convicted prisoner." *Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014). Indeed, pretrial detainees are afforded greater protection than convicted inmates in the sense that the Due Process Clause prohibits the detainee from being punished. *Id*.

Meanwhile, the Eighth Amendment forbids the "unnecessary and wanton infliction of pain" constituting cruel and unusual punishment. *Hudson v. McMillan*, 503 U.S. 1, 9-10 (1992). *See also Burns v. Eaton*, 752 F.3d 1136, 1138 (8th Cir. 2014) ("After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment"). When a prison official is accused of using excessive physical force in violation of the Eighth Amendment, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017). *See also Ward v. Smith*, 844 F.3d 717, 721 (8th Cir. 2016) ("Because the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically"). The factors to be considered in determining whether force was used in good faith include "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

Here, plaintiff alleges that Jail Administrator Akins sprayed mace into his mouth while he was in his cell. Right after deploying mace, Akins used his taser against plaintiff, causing him to fall and hit his head. Rather than an effort to maintain or restore discipline, plaintiff asserts that Akins used this force because he was angry at him for complaining about jail conditions. In

particular, plaintiff states that on the day Akins used force against him, Akins had cursed him and threatened him. The Court must accept these factual allegations as true, and make all reasonable inferences in plaintiff's favor. *See Jones v. Douglas Cty. Sheriff's Dep't*, 915 F.3d 498, 499 (8th Cir. 2019). As such, plaintiff's excessive force claim against Akins is sufficient for purposes of initial review. The Clerk of Court will be directed to issue process on Akins in his individual capacity as to plaintiff's claim of excessive force.

### ii. Failure to Protect

Under the Due Process Clause of the Fourteenth Amendment, custodians of a pretrial detainee have a duty to take reasonable steps to protect the detainee from assault by other detainees. *Schoelch v. Mitchell*, 625 F.3d 1041, 1046 (8th Cir. 2010). Likewise, under the Eighth Amendment, inmates have a clearly established right to be protected from violence by other inmates. *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000). As such, reasonable measures must be taken to guarantee inmate safety and to protect prisoners from violence at the hands of other prisoners. *See Berry v. Sherman*, 365 F.3d 631, 633-34 (8th Cir. 2004).

In this case, plaintiff asserts that Jail Administrator Akins intentionally put him into a pod with inmates who were threatening him. He further states that he requested protective custody, but was denied. Due to being placed into certain pods by Akins, plaintiff alleges that he was assaulted, resulting in his front teeth being knocked out. The Court must accept these factual allegations as true, and make all reasonable inferences in plaintiff's favor. *See Jones*, 915 F.3d at 499. As such, plaintiff's failure to protect claim against Akins is sufficient for purposes of initial review. The Clerk of Court will be directed to issue process on Akins in his individual capacity as to plaintiff's failure to protect claim.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's official capacity claims are **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of partial dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that plaintiff's claim against defendant Tommy Greenwell is **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of partial dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue on defendant Torrence Akins in his individual capacity as to plaintiff's claims of excessive force and failure to protect.

**IT IS FURTHER ORDERED** that an appeal from this order of partial dismissal would not be taken in good faith.

Dated this 11th day of March, 2022.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE